**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| IN RE SUBPOENA TO DR. JOSEPH BERENHOLZ<br><br>INMODE LTD.,<br><br>Plaintiff,<br><br>v.<br><br>BTL INDUSTRIES, INC. d/b/a BTL AESTHETICS,<br><br>Defendant. | Case No.: 2:26-mc-50619<br><br>Underlying Action:<br>InMode Ltd. v. BTL Industries, Inc.<br>No. 1:24-cv-12955-PBS (D. Mass.) |

**DR. JOSEPH BERENHOLZ'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH**

## I. INTRODUCTION

This is a nonparty customer subpoena that should never have been served. InMode Ltd. is suing BTL Industries, Inc. in the District of Massachusetts for alleged infringement of U.S. Patent No. 8,961,511. Dr. Joseph Berenholz is not a party. He is not an inventor. He is not accused of infringement. He is not an employee of BTL. He is a practicing physician in Farmington Hills, Michigan whom InMode seeks to pull into a patent case pending in Massachusetts because he purchased BTL products for use in his practice.

The subpoena is not narrow. It commands Dr. Berenholz to appear for a deposition at a court reporter's office in Southfield, Michigan and to produce documents on twenty-one (21) broad categories. Ex. A (Berenholz Subpoena). It defines "You" to include not only Dr. Berenholz, but "all Persons having any involvement in your medical practice, Atkinson Family Practice," an obvious copy-and-paste error from another subpoena to BTL customer Dr. Katherine Atkinson that underscores the boilerplate nature of the subpoena. *Compare* Ex. A (Berenholz Subpoena) to Ex. B (Atkinson Subpoena). It also seeks testimony by "deposition topics," as if Dr. Berenholz were a Rule 30(b)(6) designee obligated to prepare on behalf of an organization. He is not.

The subpoena should be quashed for at least five independent reasons. First, the requested materials and testimony are cumulative of party discovery already

served on BTL, the party with the organized records, the accused products, the sales files, the manuals, the training materials, and the communications InMode wants. Rule 26(b)(2)(C) requires courts to limit discovery that is cumulative or obtainable from a more convenient, less burdensome, or less expensive source. InMode has already sought this same information from BTL. Second, the subpoena is facially overbroad and disproportionate. It has no meaningful time limits, no claim-specific limits, no device-generation limits, and no limitation to information unavailable from BTL. Third, the subpoena seeks privileged, confidential, and protected patient information, including patient feedback, patient experience, physical changes to anatomy, and procedure results. Fourth, it seeks unretained expert testimony from a physician about medical, anatomical, technical, and evaluative topics such as tissue heating, treatment results, patient outcomes, and procedure modifications. Rule 45(d)(3)(B)(ii) protects nonparty experts from being involuntarily conscripted into service as unpaid expert witnesses. Fifth, InMode has not shown—and cannot show—that making a nonparty physician search records, review patient/privacy issues, prepare for deposition, and lose time from his medical practice (which equates to lost revenue) is proportional to the needs of this case, particularly where InMode has not first exhausted party discovery.

Rule 45 requires the court for the district of compliance to protect nonparties from undue burden. That protection should be applied here. The Court should quash

the subpoena in its entirety and order that Dr. Berenholz has no obligation to search for documents, produce documents, prepare a privilege log, appear for deposition, or otherwise respond.

## II. BACKGROUND

### A. The Underlying Patent Case Is Between InMode and BTL, Not Dr. Berenholz

InMode filed the underlying patent action against BTL in the Central District of California, and the case was later transferred to the District of Massachusetts. The operative complaint alleges that BTL's UltraFemme 360 and EmFemme 360 products and related procedures infringe the '511 patent. BTL has denied infringement and asserted invalidity and unenforceability defenses and counterclaims. The case is currently proceeding in the District of Massachusetts.

Dr. Berenholz is not a party to the underlying action. The subpoena does not identify any unique role by Dr. Berenholz in the alleged invention, prosecution, ownership, design, manufacture, marketing, or sale of the accused BTL devices. InMode's cover letter says only that, "[i]n the course of the litigation to date," InMode has "identified" Dr. Berenholz as "potentially having information related to the patent-in-suit or related patents and technology." That generic statement is not enough to justify imposing the costs and burdens of nationwide patent discovery on a nonparty physician.

**B. The Subpoena Commands Both Deposition Testimony and Document Production in This District**

The subpoena was issued from the District of Massachusetts but commands compliance in this District. It directs Dr. Berenholz to appear for deposition at U.S. Legal Support, 28411 Northwestern Hwy., Suite 1100, Southfield, Michigan, on July 2, 2026, and to bring documents described in Schedule B. Schedule B separately commands production of documents by June 15, 2026, at the same court reporter's office.

The subpoena therefore presents precisely the sort of local nonparty discovery dispute that Rule 45 assigns to the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A).

**C. The Subpoena Is Boilerplate and Sweeps Far Beyond Percipient Fact Discovery**

Schedule A lists twenty-one deposition "topics." Those topics include the first time Dr. Berenholz became aware of BTL and its accused devices; all materials viewed and all communications made with BTL; purchase steps, purchase price, and device disposition; instruction and training; experience using accused devices and performing accused procedures; Dr. Berenholz's "current understanding" of how to use accused devices and perform accused procedures; conferences and trade shows; materials received with a device; contracts and agreements; the "details" of all steps performed during any accused procedure; the "results" of any accused procedure,

including physical changes to patient anatomy and patient experience; customer or patient feedback; all documents and communications with BTL; the current relationship with BTL; all documents and communications sent to others about BTL; awareness of InMode and InMode radiant-energy devices; communications about InMode; any 'Interest' in BTL, the asserted patent, or the litigation; and authenticity/foundation topics for any documents produced.

Schedule B mirrors those topics with twenty-one document requests. The requests seek, among other things, all documents relating to purchase, training, use, patient or customer feedback, procedure results, the manner of performing procedures, all documents from BTL, all communications with BTL, all documents sent to others about BTL, all documents about InMode, and all documents relating to authenticity and business-record foundation.

The subpoena is not limited to documents unavailable from BTL. It is not limited to a particular time period. It is not limited to a particular alleged infringing act. It is not limited to a particular claim limitation. It is not limited to nonpatient information. It is not limited to percipient facts. And it is not limited to Dr. Berenholz personally, because the subpoena defines "You" and "Your" to include "all Persons having any involvement in your medical practice, Atkinson Family Practice." That definition appears copied from another physician's subpoena and would improperly require Dr. Berenholz to gather information from and prepare testimony about an

entire medical practice—indeed, through InMode's drafting error, a practice that is not even his.

**D. InMode Already Sought the Same Core Information from BTL**

InMode has served broad party discovery on BTL seeking the same categories of information. InMode's requests for production seek documents concerning the accused products and procedures, instructions, manuals, training materials, demonstrations, seminars, sales, purchase documents, physician involvement, customer feedback, financial information, and damages-related materials. *See, e.g.*, Ex. C, InMode Request for Production Nos. 7–9, 11, 22–24, 28, 31–32, 39–43. Its interrogatories likewise seek information about BTL's instructions, training, customer purchase information, customer feedback, and methods of operating the accused devices. *See, e.g.*, Ex. D, InMode Interrogatory Nos. 4, 7, 10, 13, 15.

BTL is the obvious source for BTL's own manuals, training materials, sales files, purchase agreements, communications, financial records, and customer-specific records. If InMode believes BTL's party production is incomplete, the proper remedy is to complete the meet-and-confer process and, if necessary, move to compel BTL in the underlying action. It is not to force nonparty physicians to search years of files, hire counsel, review patient/privacy issues, and sit for depositions about issues that can be addressed through party discovery.

## III. LEGAL STANDARD

A subpoena may command testimony, documents, or both, but discovery obtained by subpoena remains subject to the limits of Rule 26. Fed. R. Civ. P. 26(b), 45; *Hansen Bev. Co. v. Innovation Ventures, LLC*, No. No. 09-50630, 2009 U.S. Dist. LEXIS 65358, at *3–4 (E.D. Mich. July 29, 209 (explaining that discovery under Rule 45 is subject to the scope and limitations of Rule 26). Rule 26(b)(1) limits discovery to nonprivileged matters relevant to a claim or defense and proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to information, resources, the importance of the discovery, and whether the burden or expense outweighs the likely benefit. Rule 26(b)(2)(C) further requires courts to limit discovery that is unreasonably cumulative or duplicative, that can be obtained from a more convenient, less burdensome, or less expensive source, or whose burden outweighs its likely benefit.

Rule 45 imposes additional protections for nonparties. The issuing party and its counsel must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). On timely motion, the court for the district where compliance is required must quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Courts evaluate undue burden by considering relevance, the need for the discovery, the breadth of the request, the time period covered, the particularity of the request,

and the burden imposed. *See, e.g.*, *New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.)*, 890 F.3d 244, 251 (6th Cir. 2018).

The nonparty status of the subpoena recipient matters. Courts in this District recognize that Rule 45's protections are especially important where a subpoena burdens a nonparty. *Hansen*, 2009 U.S. Dist. LEXIS 65358, at *3 ("Courts also consider one's status as a nonparty to be a significant factor in the undue-burden analysis."). And if a nonparty is ordered to comply with a subpoena, Rule 45(d)(2)(B)(ii) requires protection from significant expense. *New Prods.*, 890 F.3d at 251–53 (affirming sanctions and cost-shifting where party issuing subpoena "failed to take reasonable steps to avoid" imposing "an undue burden or expense on the non-party Respondents").

Rule 45 also protects nonparties from compelled expert testimony. The court may quash or modify a subpoena that requires disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). The Advisory Committee Notes cite *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976), and instruct courts to consider, among other things, the degree to which the witness is being called for facts rather than opinion testimony, whether the testimony would require newly formed opinions, whether the witness is uniquely necessary, whether comparable testimony is available from retained

experts, and whether the witness would be oppressed by the compelled testimony. *See also Halderman v. Herring Networks, Inc.*, 348 F.R.D. 305 (E.D. Mich. 2025) (granting motion to quash where subpoena sought to compel unretained expert testimony).

## IV. ARGUMENT

### A. The Subpoena Should Be Quashed Because the Discovery Is Cumulative of Party Discovery and Available from BTL

A central defect in the subpoena is that it seeks from Dr. Berenholz what InMode should obtain, if at all, from BTL. BTL is the party accused of infringement. BTL has the accused devices, manuals, instructions, technical materials, sales documents, purchase files, customer communications, training materials, financial records, and witnesses knowledgeable about those subjects. InMode has already served party discovery directed to those categories. *See, e.g.*, Ex. C, InMode Request for Production Nos. 7–9, 11, 22–24, 28, 31–32, 39–43; Ex. D, InMode Interrogatory Nos. 4, 7, 10, 13, 15. The subpoena simply shifts that discovery burden from the party litigating the case to a nonparty physician who has no comparable recordkeeping infrastructure, no claim or defense at stake, and no reason to bear the costs of the parties' patent dispute.

That is exactly what Rule 26(b)(2)(C) forbids. Discovery must be limited where it is cumulative or can be obtained from a more convenient, less burdensome, or less expensive source. Fed. R. Civ. P. 26(b)(2)(C)(i). The party source is more

convenient and less burdensome for BTL-provided documents, BTL communications, BTL training materials, BTL purchase documents, BTL sales information, BTL contracts, BTL financial data, and BTL's understanding of how its products are used or allegedly infringe. If InMode believes those materials are relevant, it should pursue them from BTL in the underlying action.

*Hansen Beverage Company* is particularly instructive. There, the Eastern District of Michigan recognized that Rule 45 discovery may be limited to protect a nonparty from burden where the information sought is overbroad and available from a party. 2009 U.S. Dist. LEXIS 65358, at *4–5. The same principle applies here. InMode's subpoena seeks communications between Dr. Berenholz and BTL, BTL-provided manuals and training materials, and BTL sales/purchase information. BTL is a party and the more appropriate source for those documents. Requiring Dr. Berenholz to duplicate that search is unnecessary and disproportionate.

The subpoena also seeks deposition testimony on subjects that BTL can address through its own witnesses, documents, interrogatory answers, and Rule 30(b)(6) testimony. InMode does not need a nonparty physician's deposition to learn what BTL's manuals say, what training BTL provided, what BTL sold, what BTL charged, or how BTL contends the devices operate. The subpoena should therefore be quashed in full.

**B. The Subpoena Is Overbroad, Disproportionate, and Not Tailored to Any Unique Need for Dr. Berenholz's Testimony or Documents**

Even if some narrow nonparty discovery could theoretically be appropriate, this subpoena is not it. It contains twenty-one deposition topics and twenty-one parallel document requests. It uses expansive definitions of 'related to,' 'concerning,' 'Document,' 'ESI,' 'Person,' 'Product,' and 'Interest.' It covers all communications, all documents, all materials viewed, all steps taken to purchase devices, all training, all conferences, all results of procedures, all patient and customer feedback, all documents sent to others, all InMode-related documents, and all foundation topics. It contains no reasonable time limitation and no limitation to nonduplicative materials unavailable from BTL.

Courts applying Rule 45 consider the breadth of the requests, the time period covered, the particularity with which the requests are described, and the burden imposed. *New Prods.*, 890 F.3d at 251. Those factors weigh decisively for quashal. The requests are broad, largely unbounded, and directed to a nonparty physician with patient-care responsibilities. The burden is not merely locating a few obvious documents. It would require Dr. Berenholz and counsel to determine what devices and procedures fall within InMode's expansive definitions, search years of records and ESI, identify and review patient-related information, redact or withhold protected health information, prepare objections and privilege/privacy logs, and prepare for a deposition on topics framed like a corporate representative notice.

The deposition format itself is improper. The subpoena purports to command testimony by topics and defines "You" to include all persons involved in a medical practice. A subpoena to an individual witness under Rule 45 does not transform that individual into a Rule 30(b)(6) designee required to investigate, gather knowledge from others, and testify on behalf of a practice. Dr. Berenholz can testify only to facts within his personal knowledge. He should not be required to prepare testimony for an organization, much less for "Atkinson Family Practice," which appears to be a copy-and-paste error from another subpoena. That defect confirms that InMode served a boilerplate dragnet, not tailored discovery.

Because the subpoena is not proportional, not targeted, and not limited to unique information unavailable elsewhere, it should be quashed.

**C. The Subpoena Improperly Seeks Patient Information and Would Require Intrusive Privacy Review**

The subpoena repeatedly seeks patient-related information. Topic 12 asks for the "results" of any accused procedure, including "physical changes to the patient's anatomy and the patient's experience." Ex. A (Schedule A). Topics 13 and 14 seek customer or patient feedback, including positive, negative, or neutral impressions from patients. *Id.* The corresponding document requests seek documents relating to procedure results, patient feedback, and the manner of performing procedures. *Id.* (Schedule B). The topics and requests also necessarily implicate patient privacy and

protected health information, even if InMode later contends that it would accept redacted or deidentified materials.

Those requests are improper on their face. They are not limited to deidentified information. They are not limited to non-PHI information. They are not limited to documents already in InMode's possession or available from BTL. They do not provide a mechanism for HIPAA compliance, patient notice, consent, redaction, or privacy review. They would force a nonparty physician and his counsel to comb through patient-facing records and communications to determine what can be produced, what must be withheld, and what must be redacted.[1]

That burden is disproportionate even before considering that patient outcomes and experiences are not necessary to resolve the ordinary patent issues in the case. InMode can prove its infringement theories through the patent, accused product documentation, BTL's instructions and training, BTL witnesses, technical experts, and any properly disclosed damages evidence. It does not need patient feedback or patient anatomy information from a nonparty physician. The Court should quash the subpoena rather than require Dr. Berenholz to undertake a patient-privacy review for a patent dispute between two medical-device companies.

---

[1] InMode may respond that patient privacy can be addressed through a HIPAA-compliant protective order, but that misses the point. The existence of a protective order does not transform private patient information into relevant or proportional discovery, and it does not justify imposing on a nonparty physician the burden of locating, reviewing, redacting, and producing medical information that InMode has not shown it needs and cannot obtain from BTL.

**D. The Subpoena Seeks Unretained Expert Opinion Testimony from a Physician**

The subpoena also crosses the line from fact discovery into compelled expert testimony. InMode does not merely ask Dr. Berenholz to identify whether he bought a device or received a manual. It asks for his "current understanding" of how to use accused devices and perform accused procedures; modifications he made to BTL's instructions; his experience using the devices; the details of all procedure steps; the results of procedures; physical changes to patient anatomy; patient experience; feedback from medical professionals or patients; and awareness of InMode's radiant-energy devices for vaginal tissue.

Those topics call for medical, anatomical, technical, and evaluative testimony from a physician. They would require Dr. Berenholz to apply his medical training and professional judgment to questions about the manner of treatment, anatomy, patient outcomes, tissue effects, and device use. That is expert testimony in substance, even if InMode labels it 'fact' discovery.

Rule 45(d)(3)(B)(ii) exists to prevent this sort of compelled expert conscription. A court may quash or modify a subpoena that requires disclosure of an unretained expert's opinion or protected expert information. The Advisory Committee Notes, relying on the Second Circuit's decision in *Kaufman*, direct courts to examine whether the witness is being called because of relevant facts or to provide opinion testimony; whether the testimony would require new opinions; whether the

witness is unique; whether comparable testimony is available from retained experts; and whether the witness would be oppressed by compelled testimony. *Kaufman*, 539 F.2d at 822.

Those factors favor quashal. InMode has retained or can retain its own experts. It can examine BTL's properly disclosed experts under the expert-discovery schedule. It can pursue technical and infringement issues through BTL's documents and witnesses. It has not shown that Dr. Berenholz is unique or that no willing expert can address the medical or technical issues. Nor has it shown substantial need or undue hardship sufficient to override Rule 45(d)(3)(B)(ii). The Court should not require a nonparty physician to serve as InMode's unpaid expert witness.

### E. Concerns Regarding Unretained Expert Testimony Are Heightened Here Where the Subpoena Improperly Targets Dr. Berenholz's Prior Expert Work in an *Inter Partes Review* Proceeding Between the Same Parties Concerning the Same Patent

The subpoena is independently improper because Dr. Berenholz is not merely a physician-customer. He previously served as BTL's expert in the inter partes review proceeding between BTL and InMode concerning the same patent asserted in the underlying litigation. *See, e.g.*, Berenholz Declaration, *BTL Industries, Inc. v. InMode Ltd.*, Case No. IPR2024-00703, Ex. 1003 (T.T.A.B. Apr. 10, 2024).

An *inter partes review*, or IPR, is an adversarial proceeding before the Patent Trial and Appeal Board of the United States Patent and Trademark Office in which

a petitioner may challenge the patentability of issued patent claims based on prior patents and printed publications. Although an IPR is conducted before the Patent Office rather than an Article III court, it is a contested litigation-like proceeding. The patent owner may oppose the petition, the parties may submit expert declarations, and the Board's final written decision addresses the patentability of the challenged claims. Here, the IPR involved the same parties and the same '511 patent that InMode asserts in the underlying District of Massachusetts action. Dr. Berenholz's involvement therefore arose from his role as BTL's retained expert in a contested patent proceeding—not from any ordinary percipient-fact role in the events allegedly giving rise to InMode's infringement claims.

That distinction matters. To the extent InMode seeks testimony or documents concerning the '511 patent, related patents, prior art, invalidity, claim scope, claim construction, patentability, the accused technology, or Dr. Berenholz's prior opinions, analyses, communications, or materials considered in the IPR, the subpoena is not seeking percipient fact discovery. It is seeking expert discovery from a nonparty whom InMode has not retained and who served as BTL's expert in a prior adversarial proceeding between these same parties. As detailed above, Rule 45(d)(3)(B)(ii) exists to prevent that type of compelled expert testimony. It permits the Court to quash or modify a subpoena that requires disclosure of an unretained expert's opinion or information that does not describe specific occurrences in dispute

and results from the expert's study that was not requested by the party seeking discovery.

InMode should not be permitted to use a third-party subpoena to obtain a second bite at expert discovery from BTL's prior IPR expert. Nor should Dr. Berenholz be forced to search for, review, produce, or testify about expert materials generated in connection with BTL's IPR strategy, prior-art analysis, claim interpretation, communications with counsel, drafts, notes, or other materials protected by the expert-discovery rules, work-product doctrine, common-interest protections, or other applicable privileges and immunities. If InMode wanted expert opinions on the '511 patent, prior art, claim scope, or the accused technology, the proper mechanism was to retain its own expert and proceed under the expert-discovery framework in the underlying case—not to subpoena BTL's prior IPR expert as a supposed "fact" witness.

Nor can InMode avoid Rule 45 by arguing that Dr. Berenholz may also have some customer or physician knowledge. The subpoena is not narrowly limited to discrete percipient facts, such as whether Dr. Berenholz purchased a particular BTL device or received a particular document from BTL. Instead, it sweeps broadly across the patent-in-suit, related patents and technology, use of accused devices, performance and results of accused procedures, patient or customer feedback, communications about BTL and InMode, and other topics that would inevitably

invite expert, technical, medical, and patent-law opinions. For Dr. Berenholz, those topics also overlap with his prior expert work in the IPR. That overlap creates an undue burden and a substantial risk that InMode will use the deposition to probe protected expert work and litigation strategy under the guise of third-party fact discovery.

*Halderman* is particularly instructive. There, defendant in the underlying litigation issued a subpoena to Dr. Halderman, a non-party. 348 F.R.D. at 306. Dr. Halderman had previously served as an expert for the plaintiff in a separate litigation involving similar subject matter related to election security. *Id.* at 309–10. Dr. Halderman argued "that the defendants are attempting to conscript him as an expert witness – involuntarily and without pay" and "that compelling his testimony would be unduly burdensome." *Id.* at 306. The party issuing the subpoena "insist[ed] that Dr. Halderman [was] a fact witness, and that is the only basis upon which they [sought] his deposition. Fact witnesses, they [said], have no right to refuse to testify." *Id.* The Court disagreed, and granted the motion to quash because the "subpoena impermissibly would require him to give uncompensated expert testimony," which is prohibited by Rule 45(d)(3)(B)(ii). *Id.* at 311 (noting that, "even if the defendant could establish that the subject of their deposition inquiry will focus on the 'specific occurrences in dispute' in their case, the information they seek plainly 'results from

the expert's study that was not requested by a party" in the underlying litigation (quoting Fed. R. Civ. P. 45(d)(3)(B)).

The Court should therefore quash the subpoena in full. At minimum, any permitted discovery should expressly exclude: the IPR; Dr. Berenholz's expert work for BTL; any opinions, analyses, declarations, drafts, notes, communications, or materials considered in connection with the IPR; prior art; invalidity; patentability; claim construction; claim scope; infringement or noninfringement opinions; comparisons between BTL and InMode technology; and any medical, anatomical, technical, or patent-related opinions. Any residual discovery should be limited, if at all, to narrowly identified, nonprivileged, nonpatient, nonexpert percipient facts uniquely within Dr. Berenholz's personal knowledge and unavailable from BTL.

**F. InMode Has Not Shown Proportionality, Especially Given Its Failure to First Exhaust Less Burdensome Discovery**

Proportionality is not an afterthought. Rule 26(b)(1) requires consideration of the amount in controversy, access to information, the importance of the discovery, and whether the burden or expense outweighs the likely benefit. Those factors are especially important for nonparty subpoenas because the recipient is not litigating the case and has no stake in the claims or defenses.

Here, InMode has not shown that the burden imposed on Dr. Berenholz is justified. It has not identified any specific document or fact uniquely in Dr. Berenholz's possession. It has not explained why BTL cannot provide the manuals,

training, purchase files, communications, sales records, or other BTL-related materials. It has not explained why patient outcomes or feedback are necessary to prove infringement or damages. It has not offered to pay the costs of compliance, even though *New Products* requires protection from significant nonparty expense if compliance is ordered. And it has not tailored the subpoena to avoid patient privacy, expert-opinion, and duplicative-discovery problems.

The subpoena instead appears designed to impose burdens on BTL customers and to obtain customer testimony before InMode has made the showing Rule 26 and Rule 45 require. That is not proportional discovery. If InMode believes customer-specific information matters, it should first identify the specific nonprivileged, nonpatient, nonexpert information it contends cannot be obtained from BTL and then explain why the burden on Dr. Berenholz is justified. Until then, Dr. Berenholz should not be required to do anything in response to the subpoena.

**G. At Minimum, Any Discovery Should Be Stayed and Narrowed Substantially**

Dr. Berenholz seeks quashal in full. If the Court determines that some discovery may proceed, it should not permit the subpoena as drafted. At minimum, the Court should stay all compliance until InMode has exhausted party discovery from BTL and should limit any later discovery to narrow, nonprivileged, nonpatient, nonexpert, noncumulative percipient facts that cannot be obtained from BTL.

Any permitted document discovery should exclude patient records; patient identities; patient communications; patient feedback; patient outcomes; protected health information; medical opinions; expert opinions; comparisons to InMode technology; opinions regarding tissue heating, tissue remodeling, anatomical changes, or claim limitations; communications or documents available from BTL; and any requirement to search or produce on behalf of a medical practice. Any permitted deposition should be limited to Dr. Berenholz's personal knowledge of discrete nonprivileged facts, conducted remotely or at a location convenient to Dr. Berenholz, limited in duration, and conditioned on InMode paying reasonable costs and fees associated with compliance.

## V. CONCLUSION

For the foregoing reasons, Dr. Joseph Berenholz respectfully requests that the Court grant this motion, quash the subpoena in its entirety, and order that he need not search for documents, produce documents, prepare a privilege log, appear for deposition, or otherwise respond to the subpoena.

Dated: June 8, 2026

*/s/ Ryan D. Levy*
Ryan D. Levy (TN Bar No. 024568)
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Fax: (615) 242-2221
rdl@iplawgroup.com

*Counsel for Nonparty Dr. Joseph Berenholz*

## CERTIFICATE OF SERVICE

I certify that on June 8, 2026, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and, if not so registered, that paper copies will be emailed to such parties or their counsel.

*/s/ Ryan D. Levy*
Ryan D. Levy